IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHARLES E. THOMAS, MARSHA HALL, and MARK THOMAS, Individually and as Co-Administrators of the ESTATE OF ELIZABETH M. THOMAS, Deceased,<br><br>Plaintiffs,<br><br>v.<br><br>WESTMORELAND COUNTY; and WESTMORELAND COUNTY d/b/a WESTMORELAND MANOR,<br><br>Defendants. | Civil Action No. 20-1903 |

**MEMORANDUM OPINION**

Presently before the Court is the Rule 12(b)(6) Motion to Dismiss and brief in support thereof filed by Defendants Westmoreland County and Westmoreland County d/b/a Westmoreland Manor (Docket Nos. 6, 7), the response in opposition thereto filed by Plaintiffs Charles E. Thomas, Marsha Hall, and Mark Thomas, who have brought suit individually and as co-administrators of the estate of Elizabeth M. Thomas, deceased (Docket No. 8), and Defendants' reply (Docket No. 9). For the reasons set forth herein, Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is granted without prejudice to amendment with sufficient facts to state a claim.

**I.    Background**

As alleged in the Complaint, Plaintiffs are the adult children of the late Elizabeth M. Thomas (hereinafter, "Ms. Thomas") and are also the administrators of her estate. (Docket No. 1, ¶¶ 4, 5). Plaintiffs contend that Westmoreland County is a governmental agency that owned and

operated Westmoreland Manor, a skilled nursing facility, at the time of the events alleged in this action (hereinafter, "Defendants"). (Id. ¶¶ 6-9).

According to the Complaint, on December 4, 2018, Ms. Thomas was admitted to Westmoreland Manor following a hospitalization at Excela Hospital. (Docket No. 1, ¶ 18). Although Ms. Thomas was transferred back to Excela Hospital the following day, she was readmitted to Westmoreland Manor two days later, on December 7, 2018. (Id. ¶¶ 20, 21). As alleged, after a series of events involving urinary retention as well as some other health issues, Ms. Thomas was again transferred back to Excela Hospital on January 21, 2019. (Id. ¶ 40). Plaintiffs contend that Ms. Thomas was admitted to the hospital with diagnoses of pancreatitis, UTI, dehydration and elevated magnesium and BUN. (Id. ¶ 44).

Plaintiffs aver that on January 27, 2019, Ms. Thomas was readmitted to Westmoreland Manor and, upon her discharge from Excela Hospital, it was noted that she had been treated at the hospital for pancreatitis, acute kidney injury, elevated blood urea nitrogen, vomiting, dehydration, UTI and hypotension. (Docket No. 1, ¶¶ 48, 49). On January 30, 2019, a nutrition evaluation completed at Westmoreland Manor showed that Ms. Thomas had experienced a ten-pound weight loss the previous month. (Id. ¶ 52). On February 1, 2019, Ms. Thomas' laboratory results were processed and indicated dehydration and infection. (Id. ¶¶ 53, 54). Plaintiffs claim that a Westmoreland Manor nurse practitioner reviewed the laboratory results and ordered follow-up in one week with fluid encouragement. (Id. ¶ 55).

According to Plaintiffs, the next day, February 2, 2019, a Westmoreland Manor staff nurse documented Ms. Thomas' poor fluid intake and, that evening, after nursing staff were unable to start an IV on Ms. Thomas, she was transferred back to Excela Hospital. (Docket No. 1, ¶¶ 57, 61). Upon admission to the hospital, Ms. Thomas was diagnosed with severe sepsis, UTI, acute

kidney failure, pneumonia, hypernatremia and altered mental status, while laboratory studies indicated dehydration.  (Id. ¶¶ 63, 64).  According to the Complaint, over the next several days, Ms. Thomas's condition deteriorated, and on February 8, 2019, Ms. Thomas died.  (Id. ¶¶ 65, 66).  Ms. Thomas' death certificate indicated that she died of respiratory failure and pneumonia.  (Id. ¶ 67).

On December 8, 2020, Plaintiffs filed their Complaint, alleging two claims against Defendants:  (I) Deprivation of Civil Rights Enforceable via 42 U.S.C. § 1983; and (II) Wrongful Death.  Plaintiffs seek damages in excess of $75,000.00, plus interest, costs of suit, and attorney fees.  Defendants have filed a motion to dismiss both counts of the Complaint pursuant to Rule 12(b)(6) for failure to state claims upon which relief can be granted.

**II.     Standard of Review**

In considering a Rule 12(b)(6) motion to dismiss, the factual allegations contained in the complaint must be accepted as true and must be construed in the light most favorable to the plaintiff, and the court must "'determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'"  Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)); see Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 563 n.8 (2007).  While Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," the complaint must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Phillips, 515 F.3d at 231 (quoting Twombly, 550 U.S. at 555 (additional internal citation omitted)).  Moreover, while "this standard does not require 'detailed factual allegations,'" Rule 8 "demands more than an unadorned, the-defendant-unlawfully-

harmed-me accusation." Id. (quoting Twombly, 550 U.S. at 555); Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555).

It should be further noted, therefore, that in order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). The Supreme Court has noted that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). The standard "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips, 515 F.3d at 234 (quoting Twombly, 550 U.S. at 556). Moreover, the requirement that a court accept as true all factual allegations does not extend to legal conclusions; thus, a court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555 (internal citation omitted)).

### III.     Legal Analysis

#### A.  Count I:  Deprivation of Civil Rights via 42 U.S.C. § 1983

In Count I of their Complaint, Plaintiffs allege a claim against Defendants for deprivation of Ms. Thomas' civil rights pursuant to 42 U.S.C. § 1983. (Docket No. 1, ¶¶ 68-80). Plaintiffs contend that Westmoreland Manor is bound by the Federal Nursing Home Reform Act ("FNHRA"), which was passed as part of the Omnibus Budget Reconciliation Act of 1987 ("OBRA"), Pub. L. No. 100-203, §§ 4201-4218, 101 Stat. 1330, 1330-160 to -221 (1987) (codified at 42 U.S.C. §§ 1395i-3, 1396r), and that it is also bound by the OBRA/FNHRA implementing regulations found at 42 C.F.R. § 483 et seq. (Id. ¶¶ 70, 71). Plaintiffs note that the specific detailed

regulatory provisions as well as the statutes themselves create rights which are enforceable pursuant to 42 U.S.C. § 1983.  (Id. ¶ 72).

Section 1983 functions as a "vehicle for imposing liability against anyone who, under color of state law, deprives a person of 'rights, privileges, or immunities secured by the Constitution *and laws*.'"  Grammer v. John J. Kane Reg'l Ctrs.-Glen Hazel, 570 F.3d 520, 525 (3d Cir. 2009) (quoting 42 U.S.C. § 1983 (emphasis added)).  Here, Plaintiffs allege that Westmoreland Manor acted under color of state law because it is owned and operated by Westmoreland County.  The Third Circuit has held that provisions of the FNHRA "confer individual rights that are presumptively enforceable through § 1983."  Id. at 532.  It is clear that the facts alleged by Plaintiffs, viewed in the light most favorable to them, sufficiently allege a violation of Ms. Thomas' federally protected rights under the FNHRA.  See Robinson v. Fair Acres Geriatric Ctr., 722 Fed. Appx. 194, 197 (3d Cir. 2018).

To hold Defendants liable for such violations under Section 1983, however, Plaintiffs must allege more than a violation of Ms. Thomas' rights by Defendants' employees; Plaintiffs must also sufficiently plead that those alleged violations are *attributable to* Defendants.  "'[A] municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under 1983 on a *respondeat superior* theory.'"  Id. (quoting Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978)).  Thus, the alleged violation of rights must have been caused by actions that were taken pursuant to a municipal "policy" or "custom."  See id. at 198 (citing Natale v. Camden County Correctional Facility, 318 F.3d 575, 583-84 (3d Cir. 2003)); see also Monell, 436 U.S. at 690-94 (explaining what has been referred to as the Monell framework or Monell liability).  "A policy is made 'when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues a final proclamation, policy or edict.'"

5

Natale, 318 F.3d at 584 (quoting Kneipp v. Tedder, 95 F.3d 1199, 1212 (3d Cir. 1996)).  A "custom," on the other hand, involves "practices of state officials . . . so permanent and well settled as to constitute a 'custom or usage' with the force of law."  Monell, 436 U.S. at 691.

Acts by a government employee may be deemed to be the result of a policy or custom of the entity for whom the employee works in three situations:  (1) "where 'the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy;'" (2) "where 'no rule has been announced as policy but federal law has been violated by an act of the policymaker itself;'" and (3) "where 'the policymaker has *failed to act affirmatively* at all, [though] the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been *deliberately indifferent* to the need.'"  Natale, 318 F.3d at 584 (quoting Bd. of County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 417-18 (1997) (emphasis added, and internal quotation marks and citation omitted)).

It is unclear which of these theories of liability Plaintiffs are pursuing in their Complaint, which broadly alleges that Westmoreland Manor "as a custom and policy, failed to adhere to the above statutes and regulations and/or, in the alternative, that Defendant Westmoreland Manor failed to implement and follow appropriate custom and policies and/or, in the alternative, Defendant Westmoreland Manor had unwritten customs and policies that did not adhere to the applicable statutes and regulations."  (Docket No. 1, ¶ 73).  Although Plaintiffs argue that they have alleged more specifically Defendants' failure to comply with a number of separate provisions of the FNHRA and its regulations, these alleged failures, which Plaintiffs list in a series of subparagraphs in the Complaint, are also extremely broad and lacking in factual specificity.  (Id.

6

¶ 74(a)-(s)).  For example, the first subparagraph alleges that Westmoreland Manor failed to comply with the statutes and regulations "[b]y failing, as a custom and policy, to care for patients, including Ms. Thomas, in a manner than promoted maintenance or enhancement of her life, as required by 42 C.F.R. § 483.24 and 42 U.S.C. § 1396r(b)(1)(A)."  (Id. ¶ 74(a)).  While such averment alleges a statutory violation, it does not allege specific facts to support that allegation, but simply restates the language of the statute itself.  See 42 U.S.C. § 1396r(b)(1)(A) ("A nursing facility must care for its residents in such a manner and in such an environment as will promote maintenance or enhancement of the quality of life of each resident").

Plaintiffs also assert that they have provided support for their claims by alleging that Westmoreland Manor was cited numerous times between January and September of 2018 for regulatory violations, and that these citations provide evidence that such failures are part of a custom or policy.  (Id. ¶¶ 75, 76).  Plaintiffs contend that these regulatory violations show that Westmoreland Manor "as a policy and/or custom and practice was deliberately indifferent to Ms. Thomas' needs" and "deprived her of federally guaranteed and protected rights."  (Id. ¶ 77).  Here again, however, Plaintiffs' list of alleged violations is extremely broad (including "Care planning," "Abuse/neglect," "Resident records," "Failure to train staff," "Resident rights," and "Assessments"), and it fails to provide specific factual support for Plaintiffs' allegations regarding Defendants' policies or customs.

Thus, because the Complaint provides no additional facts about Defendants' alleged customs or policies, such general references to such policies or customs are merely conclusory. Additionally, Plaintiffs do not identify any particular policymakers in their Complaint, nor do they plead that any particular policymakers took affirmative action that caused Ms. Thomas' injuries, nor do Plaintiffs plead that any actions taken by particular policymakers could be fairly treated as

policy or custom.  See Robinson, 722 Fed. Appx. at 198.  Accordingly, since Plaintiffs do not allege in their Complaint that Ms. Thomas' injuries were "caused by affirmative actions on the part of a particular policymaker," their claim cannot proceed based on either of the first two theories of establishing liability.  Id.; see Thomas v. County of Chester, Pocopson Home, 312 F. Supp. 3d 448, 454 (E.D. Pa. 2018); Doyle v. Neshaminy Manor, Inc., 2018 WL 1954119, at *5 (E.D. Pa. Apr. 25, 2018).

Nevertheless, in response to Defendants' motion to dismiss, Plaintiffs claim that their Complaint is based at least in part on Defendants' failure to train, monitor and supervise their employees, which could proceed under the third theory of establishing liability, a failure to act that demonstrates deliberate indifference.  See Robinson, 722 Fed. Appx. at 198-99 (discussing Monell, 436 U.S. at 658, and Natale, 318 F.3d at 575).  In order for a failure-to-train or failure-to-supervise claim to succeed, however, Plaintiffs must show policymakers' "'continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees.'"  Id. at 199 (quoting Bryan County, 520 U.S. at 407).  Also, "'for liability to attach in this circumstance the identified deficiency in a [municipal]ity's training program must be closely related to the ultimate injury.'"  Id. (quoting City of Canton v. Harris, 489 U.S. 378, 391 (1989)).

Upon review of the Complaint, the Court finds that the allegations contained therein are insufficient to meet these standards.  First, the Complaint contains no allegations that Defendants failed to train their employees.  Additionally, the only reference in the Complaint to Defendants' monitoring or supervision of employees is a general allegation that Westmoreland Manor failed, "as a custom and policy, to ensure that [its] administrator and director of nursing properly monitored and supervised subordinate staff, thereby failing to ensure the health and safety of residents or patients, including Mrs. Thomas, in derogation of 42 C.F.R. § 483.75 and 42 U.S.C.

§ 1396r(b)(B)." (Docket No. 1, ¶ 74(s)). Such averment, quite simply, does not allege that a *specific failure* to monitor or supervise was *closely related* to the ultimate injury allegedly suffered by Ms. Thomas.

Additionally, although Plaintiffs allege that Westmoreland Manor was "cited" for a number of "violations" in 2018—and while citations for regulatory violations could in some instances provide evidence of relevant inadequate training—the number and character of the citations pled in the Complaint do not provide specific factual evidence of Defendants' failure to train or supervise employees in areas relevant to the injuries alleged here. See Robinson, 722 Fed. Appx. at 199-200. Instead, Plaintiffs merely list eight different violations by broad category and note in a footnote that the citations can be found on "the Pennsylvania Department of Health's website under the search tab for facilities." (Docket No. 1 at 12, n.1). Furthermore, the website that appears to be that described by Plaintiffs (no actual web address is provided) contains an enormous amount of information, and it is not apparent to the Court which information on the website is alleged to be relevant to, and supportive of, Plaintiffs' claims.

Thus, Plaintiffs make no allegations in their Complaint as to how the listed citations relate to Defendants' alleged failures to act affirmatively, nor do Plaintiffs allege how those failures ultimately resulted in the harm suffered by Ms. Thomas. See, e.g., Robinson, 722 Fed. Appx. at 199-200 (finding that a Section 1983 claim was sufficiently pled under a failure-to-train theory where plaintiff alleged the facility's training to be inadequate; plaintiff's injuries involved infection, gangrene and loss of her leg; the facility allegedly received deficiency citations for failing to maintain infection control; and the deficiency in the training program included failure to maintain infection control; then the identified deficiency in the training program was closely related to the ultimate injury). In fact, Plaintiffs make no attempt whatsoever to draw a connection

9

between Defendants' alleged violations of statutes and/or regulations and the actual harm allegedly suffered by Ms. Thomas. Without such a connection, the Complaint is insufficient. See Schlaybach v. Berks Heim Nursing & Rehabilitation, 434 F. Supp. 3d 342, 357-58 (E.D. Pa. 2020) (explaining that a violation of federal law, standing alone, is not enough for Monell liability, and that "a plaintiff must still establish that the injury was the direct result of a municipal policy or custom"). Therefore, Plaintiffs have also failed to allege a claim against Defendants based on the third theory of establishing liability, a failure to act (here, a failure to supervise, monitor or train) demonstrating deliberate indifference to a need to take action.

Accordingly, Plaintiffs have failed to state a claim for deprivation of civil rights under Section 1983 based on Defendants' alleged violations of the FNHRA. Count I of the Complaint will therefore be dismissed without prejudice.

### B. Count II: Wrongful Death

In Count II of their Complaint, Plaintiffs seek to recover damages from Defendants for the alleged wrongful death of Ms. Thomas. (Docket No. 1, ¶¶ 81-83). Count II does not, however, specify the law pursuant to which such relief is sought.

To the extent that Plaintiffs' wrongful death claim is brought pursuant to Pennsylvania law, such claim should be dismissed because Defendants are immune from tort liability under the Pennsylvania Political Subdivision Tort Claims Act ("PSTCA"), 42 Pa. C.S. § 8541. The PSTCA provides Pennsylvania municipalities and local agencies with general immunity from tort liability. See id.; Thomas, 312 F. Supp. 3d at 452. Since Plaintiffs allege that Westmoreland Manor is liable in this action because it is owned and operated by Westmoreland County, Westmoreland Manor is alleged to be a "local agency." See 42 Pa. C.S. § 8541. Additionally, upon consideration of the allegations in the Complaint, the Court notes that none of the PSTCA's exceptions to immunity

are alleged to apply to this case.  See id. § 8542.  Therefore, under the PSTCA, Defendants are immune from tort claims brought against them pursuant to Pennsylvania law.

However, the Third Circuit has held that the PSTCA, "although effective against a state tort claim, has no force when applied to suits under the Civil Rights Acts."  Wade v. City of Pittsburgh, 765 F.2d 405, 407 (3d Cir. 1985).  Accordingly, to the extent that Plaintiffs seek in Count II to recover damages pursuant to 42 U.S.C. § 1983, the PSTCA cannot be used to immunize Defendants against such claim.  Regardless, because Plaintiffs base their claim in Count II on the same allegations as those relied upon in Count I – allegations that the Court finds to be insufficient – Count II of the Complaint must be dismissed without prejudice for the same reasons set forth, supra, with regard to Count I.

## IV.   Conclusion

For the reasons stated, Defendants' Motion to Dismiss is GRANTED for failure to state claims upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

Accordingly, both Counts of the Complaint are DISMISSED WITHOUT PREJUDICE to amendment with sufficient facts to state a claim.

An appropriate Order follows.


Dated:  April 27, 2021                                       *s/ W. Scott Hardy*
                                                             W. Scott Hardy
                                                             United States District Judge

cc/ecf:  All counsel of record

11